IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS LEE HENDERSON, SR.,<br><br>    Plaintiff,<br><br>  v.<br><br>J. PETERSON, et al.,<br><br>    Defendants.<br>_____ | No. C 07-2838 SBA (PR)<br><br>**ORDER OF SERVICE; REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM; AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>(Docket no. 10) |

Plaintiff Curtis Lee Henderson Sr., a state prisoner currently incarcerated at California State Prison - Delano (Delano), filed this civil rights action under 42 U.S.C. § 1983 against prison officials at Pelican Bay State Prison (PBSP) for injuries incurred in 2006. Plaintiff has since filed a second amended complaint. He has been granted leave to proceed in forma pauperis.

Plaintiff has also filed a motion for a temporary restraining order (TRO) (docket no. 10).

**BACKGROUND**

Plaintiff makes the following allegations in his verified second amended complaint (verified complaint):

Plaintiff claims that he is "excluded from PBSP Security Housing Unit (SHU) due to [his] mental illness." (Verified Compl. at 5.)

While he was incarcerated at PBSP, Plaintiff refused cell mates because of the "ongoing violence at PBSP" and because he "feared for [his] safety." (Id.)

On October 13, 2005, Plaintiff was transferred from PBSP to Fresno County Jail for an evidentiary hearing on his commitment offense. (Id. at 6.)

On February 21, 2006, Plaintiff returned to PBSP. (Id.) Plaintiff was informed by PBSP Lieutenant M. L. Miller that he had "enemies on both facilities A and B" and that he needed to be placed in the Administrative Segregation Unit (ASU) because he "continued to refuse a cellmate." (Id.)

On March 1, 2006 and April 19, 2006, the classification committee at PBSP informed Plaintiff

that he would remain in the ASU "due to enemy concerns" and that he would be placed in a single cell. (Id.)

On May 24, 2006, Plaintiff went before another classification committee, which included two named defendants: Defendants PBSP Associate Warden M. Cook and PBSP Correctional Counselor K. Cruse. Defendant Cook informed Plaintiff that he was being removed from single cell status. In a "threatening voice and demeanor," Defendant Cook told Plaintiff: "I am taking you off single cell status and placing you on the yard so don't be crying about it." (Id. at 7.) Plaintiff protested and informed Defendants Cook and Cruse that "it was illegal to place [his] safety and security in such danger." (Id.) Defendant Cruse told Plaintiff "in a loud voice" to "[s]top crying, go out there and be a man . . . ." (Id.) Defendants Cook and Cruse placed Plaintiff in a general population cell with inmate Curtis Jackson, "a known sexual pervert." (Id.) Plaintiff was "forced into the cell and forced to sign a compatibility slip under the threat of losing [his] property." (Id.) The cell door was covered with "bright yellow plexyglass [sic] which announces to every one that the occupent [sic] of the cell is a 'sexual pervert.'" (Id.) A "yellow wood block" was "locked onto the cell door." (Id.) Plaintiff claims "the placement of the block put [his] safety in danger." (Id. at 8.) Plaintiff then refused to enter his cell, and he was "placed in a holding cell from 10:00 AM until about 7 or 8 PM." (Id.) Plaintiff was then moved to "8 building," where he refused a cell mate out of "fear of being double celled." (Id.)

On July 15, 2006, Plaintiff was moved to "6 building." (Id.) Defendant PBSP Correctional Officer J. Brown ordered Plaintiff to "double cell" with inmate Gaither, but Plaintiff refused. (Id.) Afterwards, Defendant Brown ordered Plaintiff to "double cell" with inmate McClaurin, and Plaintiff again refused. (Id.) In retaliation, Defendant Brown issued Plaintiff a "Rule Violation Report for refusal to obey orders and moved [Plaintiff] to 7 building." (Id.)

Upon his arrival at "7 building," Plaintiff informed Defendants Brown along with PBSP Correctional Officers K. Getz and S. Luckett that he would be filing a complaint because their actions were "unconstitutional." (Id. at 9.) In retaliation, Defendants Getz and Luckett confiscated Plaintiff's television and limited his privileges by placing him on "C status."[1] (Id.) Plaintiff requested to see a

---

[1] C status inmates cannot possess a television, do not have access to the canteen, and cannot receive packages or phone calls. (Verified Compl. at 9.)

2

sergeant because an inmate can be placed on "C status only by a classification committee and only for refusing to work." (Id.)  Plaintiff informed Defendants Getz and Luckett that he would be filing a complaint, and in retaliation, Defendant Getz wrote Plaintiff a rule violation report for "delaying a peace officer." (Id.)

On August 6, 2006, Defendant PBSP Correctional Officer Tupy found Plaintiff guilty of both rule violations from the reports of Defendants Brown and Getz, and then "moved Plaintiff to 5 building [as] further retaliation." (Id.)  He was "moved 6 time's [sic] from cell to cell, [as] a collective retaliatory measure and nefarious scheme by all these defendants." (Id.)

On August 16, 2006, Defendants PBSP Correctional Officers J. Peterson and C. Speaker attempted to place Plaintiff in a double cell with another inmate.  When Plaintiff refused, they handcuffed him and placed him in a cage "approximately 2 1/2 feet wide, 2 1/2 feet long and 7 feet high where [he] stayed from 3 PM to about 6 or 7 PM." (Id. at 10.)

When prison officials attempted to put Plaintiff in another cell, he informed Defendant PBSP S. L. Thompson that he had "safety concerns" and showed Defendants Thompson and Peterson "documentation that clearly showed that [Plaintiff] had enemies on the yard and feared for [his] safety." (Id.)  Nonetheless, they ignored Plaintiff's documentation and placed him in a cell with inmate "Harry O.," an active member of the "Blood's street gang." (Id.)  Plaintiff is listed as a member of the rival Crips gang, and while he denies such gang involvement, he argues that "placing [him] in a cell with a Blood put [his] life in immediate danger . . . ." (Id. at 10.)

It was then at this time that Plaintiff began having chest pains.  He informed Defendant Speaker that he needed to see the medical technical assistant (MTA).  Defendant Peterson then escorted Plaintiff to the rotunda.  Plaintiff was searched by Defendant Speaker, who found an address book on Plaintiff and threatened to confiscate it. (Id. at 11.)  Defendant Peterson kicked Plaintiff's address book across the floor.  When Plaintiff bent over to pick up his address book from the floor, Defendant Peterson pulled out his baton and "drove it into [Plaintiff's] back like a stake." (Id. at 12.)  Defendant Speaker grabbed Plaintiff's left arm, pulled out his baton, and hit Plaintiff at "the base of [his] skull, neck and shoulder [blades]." (Id.)  Defendant Peterson began hitting Plaintiff on his thighs. (Id.)  Even after Plaintiff pleaded with them to stop, Defendants Peterson and Speaker

3

continued to "assault" him. (Id.) Plaintiff "managed to get free of . . . Defendant Speakers [sic] hold on [his] arm [and Plaintiff] then stepped as far away as [he] could from the two defendants to prevent from being beaten any worse." (Id.) Thereafter, Defendant Peterson "pulled out his O.C. pepper spray and sprayed a long burst of about 7 to 9 seconds." (Id. at 13.) Defendant Peterson then "jumped down" on Plaintiff's back "with all of his body weight" and Defendant Speaker "did the same to [Plaintiff's] legs." (Id.) Defendants Speaker and Peterson handcuffed Plaintiff, and he "lost circulation in [his] left arm and handcuffs cut deep into [his] skin." (Id.) Even though Plaintiff claims that "[a]t no time did [he] hit, kick, swing or punch these Defendants, Defendant Speaker ordered Defendant PBSP Correctional Officer M. D. Bullock to hold Plaintiff down. (Id.) Although Plaintiff was not resisting, Defendant Bullock "jumped down on [Plaintiff's] back, grabbed [his] head and violently wrenching it to the left, slamming the right side of [his] face to the concrete floor and then punched [him] in the left side of [his] jaw." (Id.) Plaintiff could not defend himself because he was in handcuffs and leg irons at that time. (Id.)

Plaintiff pleaded for Defendants PBSP Lieutenants D. A. Christ and G. Kelly to "take charge of the situation;" however, they walked away and allowed the assault to continue. (Id. at 14.) Defendant PBSP Correctional Officer J. McBride was also present, but he failed to intervene and prevent any further beating. (Id. at 15.)

Defendant Bullock "rushed [Plaintiff] to the mini yard and forced [him] under a shower with freezing cold water." (Id. at 16.) Plaintiff was then placed in a cage. (Id.) He requested medical care because he could not feel his arms, but he was denied medical treatment. (Id.)

Defendant PBSP MTA J. T. Patch falsified the medical report to cover up the assault by stating that Plaintiff had no injuries. (Id. at 17.)

On August 17, 2006, PBSP MTA Gurose treated Plaintiff for his injuries. (Id. at 18.) An investigation into the use of excessive force was ordered. (Id.) Defendant Christ conducted the investigation, and Plaintiff objected because Defendant Christ witnessed the beating and failed to intervene. (Id.)

On August 18, 2006, Plaintiff was seen by PBSP Physician Dr. Jain, and x-rays revealed a damaged bone in Plaintiff's right hand. (Id. at 19.) Dr. Jain ordered special handcuffs and wrist

4

splints for Plaintiff's nerve damage. (Id. at 19.)

On September 14, 2006, Plaintiff told Defendant McBride that he should have intervened to stop the beating, and he responded, "what could I do, a sergeant[,] lieutenant and a captain [were] right there." (Id. at 20.)

On November 22, 2006, Plaintiff indicated that he filed a complaint when he went before the "institutional classification committee," which included Defendants Cook and Cruse, as well as Defendants PBSP Correctional Lieutenant J. Akin and PBSP Psychologist J. Moulton, and the aforementioned Defendants threatened to place Plaintiff in the SHU. (Id. at 21.)

Also on November 22, 2006, Plaintiff filed a 602 appeal against "these Defendants."[2] (Id. at 22.) He claims that on January 24, 2007, Defendant PBSP Psychologist Supervisor D. Mandel denied his 602 appeal. (Id.) His 602 appeal was denied again on February 14, 2007, and also denied at the third level on June 8, 2007. (Id.)

On March 1, 2007, Plaintiff was transferred to the SHU, and after attempting suicide, he was transferred to "PBSP infirmary for suicide prvention [sic] program." (Id.)

On April 25, 2007, Plaintiff met PBSP Correctional Officer Cusiac to inquire about why his legal mail had not been sent out on August 16, 2006. Officer Cusiac stated that he forwarded the legal mail to Defendant PBSP Correctional Sergeant Wright, who threw Plaintiff's mail in the trash. (Id. at 23.) Thus, Defendant Wright "obstructed [Plaintiff's] first amendment right to correspond with the courts by destroying [his] legal mail in retaliation for notifying the courts and to keep the public and honorable judicial administration from knowing that [he] was beaten." (Id.)

On May 3, 2007, Plaintiff received notice that the Honorable Thelton E. Henderson was in receipt of his correspondence concerning Plaintiff's mental health, and Judge Henderson ordered review by the prison law office. (Id. at 24.) Thereafter, the "Deputy Attorney General Mike Jorgenson ordered an immediate review of Plaintiff's mental health." (Id.) It was determined that Plaintiff's SHU placement was in violation of health care policies and procedures. (Id.) Plaintiff was immediately placed in administrative segregation and ordered to be transferred to California State

---

[2] Plaintiff does not indicate what claims he included in this 602 appeal or which defendants he named in the appeal.

5

Prison - Corcoran (Corcoran). (Id.)

On July 11, 2007, Plaintiff was transferred to Corcoran. (Id. at 25.)

As a result of the August 16, 2006 assault, Plaintiff suffered from headaches, difficulty breathing, numb wrists, and constant pain in his right wrist and forearm. (Id.) He also sustained a damaged jaw, and he has various scars on his wrists and ankles from the injuries caused by the handcuffs and leg irons. (Id.)

Plaintiff seeks injunctive relief and monetary damages. (Id. at 26-27.)

## DISCUSSION

### I. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

### II. Legal Claims

#### A. Injunctive Relief Claims

Plaintiff seeks both injunctive relief and monetary damages. However, he is no longer incarcerated at the prison where the alleged violations took place. The jurisdiction of the federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. Pub. Utilities Comm'n of State of Cal. v. FERC, 100 F.3d 1451, 1458 (9th Cir. 1996). A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: Where the question sought to be adjudicated has been mooted by developments

6

subsequent to filing of the complaint, no justiciable controversy is presented. Flast v. Cohen, 392 U.S. 83, 95 (1968). Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances. See Mitchell v. Dupnik, 75 F.3d 517, 528 (9th Cir. 1996).

When an inmate has been transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995). A claim that the inmate might be re-transferred to the prison where the injury occurred is too speculative to overcome mootness. Id.

When Plaintiff filed his original complaint on May 31, 2007, he was incarcerated at PBSP. He alleged unconstitutional conditions of confinement during the period of his confinement at PBSP through the date he was transferred to Corcoran, July 11, 2007. Plaintiff sought injunctive relief to remedy these alleged injuries. Because Plaintiff has not been incarcerated at PBSP since at least July 11, 2007, his claims for injunctive relief from the conditions of his confinement at PBSP are DISMISSED as moot.[3] The Court reviews Plaintiff's remaining claims for damages.

**B.    Eighth Amendment Claims**

**1.    Excessive Force**

A prisoner has the right to be free from cruel and unusual punishment, including physical abuse by prison guards. Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citing Whitley v. Albers, 475 U.S. 312, 317 (1986)).

Plaintiff alleges Defendants Peterson, Speaker and Bullock used excessive force against him on August 16, 2006. During the assault, Plaintiff alleges Defendants McBride, Christ and Kelly failed to intervene and prevent any further abuse. These facts support an inference that Defendants McBride, Christ and Kelly were liable for Defendants Peterson's, Speaker's and Bullock's physical attack on

---

[3] Moreover, should Plaintiff seek to allege that some or all of his claims extend to the conditions of his confinement at Corcoran, those claims must be brought in a separate lawsuit in the United States District Court for the Eastern District of California, the proper venue for claims arising in Kings County, where Corcoran is located. See 28 U.S.C. § 1391(b); 28 U.S.C. § 84(b).

7

Plaintiff by failing to intervene. See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability). Accordingly, the Court finds cognizable Plaintiff's Eighth Amendment claims against Defendants Peterson, Speaker and Bullock for the use of excessive force and against Defendants McBride, Christ and Kelly for failing to intervene.

### 2. Deliberate Indifference to Serious Medical Needs

Plaintiff's allegations relating to the incident of excessive force on August 16, 2006 also state a claim for deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (deliberate indifference to serious medical needs presents a cognizable claim for violation of the Eighth Amendment). Plaintiff states that after the incident, Defendant Bullock put Plaintiff under "a shower with freezing cold water" and then left him in a cage. (Verified Compl. at 16.) Plaintiff claims Defendants Peterson, Speaker, Bullock, McBride, Christ and Kelly ignored his requests to be seen by the MTA and thus failed to seek medical treatment for Plaintiff's injuries. (Id.) He also claims that Defendant MTA J. T. Patch falsified an "official medical report" by stating that Plaintiff had no injuries to "justify not giving [him] medical treatment . . . so the defendants would escape liability." (Id. at 17.) Accordingly, Plaintiff has adequately alleged cognizable claims against Defendants Peterson, Speaker, Bullock, McBride, Christ, Kelly and Patch for deliberate indifference to his medical needs.

### 3. Deliberate Indifference to Safety Needs

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Id. at 833. A prisoner need not wait until harm has occurred to state a claim and obtain relief. Id. at 845. If the court finds the Eighth Amendment's objective and subjective requirements satisfied, it may grant appropriate relief. Id. at 845-46; Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).

A prisoner may state a claim under the Eighth Amendment against prison officials only where the officials acted with deliberate indifference to the prisoner's safety needs. See id. An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing

that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. See Farmer, 511 U.S. at 842. A prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault." See Berg, 794 F.2d at 459.

Liberally construed, Plaintiff's allegations that being placed in double cell status subjects him to a substantial risk of serious harm present a constitutionally cognizable claim for relief. Accordingly, Plaintiff's claims against Defendants Cook, Cruse, Thompson and Brown for allegedly ordering him to double cell with other inmates despite being eligible for single cell status are cognizable under the Eighth Amendment based on their deliberate indifference to his safety needs.

### C. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). To prove retaliation, a plaintiff must show that the defendants took adverse action against him or her that "would have chilled or silenced a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214,1228 (9th Cir. 2000) (citing Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Here, Plaintiff's allegations that he was punished and placed in a "holding cell" by Defendants Cook and Cruse because he refused to double cell with inmate Jackson present a constitutionally cognizable claim for relief. Accordingly, Plaintiff states cognizable retaliation claims against Defendants Cook and Cruse.

Plaintiff also alleges that Defendants Getz, Brown, Tupy, Akin, Moulton, Cook and Cruse retaliated against him for filing complaints. Specifically, Plaintiff argues that retaliatory motive can be inferred against Defendants Getz and Luckett because they confiscated his television and placed

9

him on C status after being told he filed a complaint.[4] Plaintiff also argues that retaliatory motive can be inferred against Defendants Tupy, Akin, Moulton, Cook and Cruse because they threatened to place Plaintiff in the SHU after being told he filed a complaint. However, his allegations that the aforementioned Defendants' actions occurred after he informed them that he filed a complaint does not, without more, establish retaliation; rather, Plaintiff must allege a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this"). Here, Plaintiff does not allege any nexus between the actions of the aforementioned Defendants and the filing of his complaints. While Plaintiff claims that they acted without a legitimate administrative purpose, there is no indication that these prison officials would not have acted as they did even if Plaintiff had not filed the complaints. Accordingly, Plaintiff's retaliation claims against Defendants Getz, Luckett, Brown, Tupy, Akin, Moulton, Cook and Cruse, based on their actions after Plaintiff informed them he filed complaints, are dismissed with leave to amend. He may file an amendment to the complaint to allege that their actions were in retaliation for the exercise of his constitutional rights. In his amendment to the complaint, Plaintiff must also link specific Defendants to his claim by explaining what that Defendant did that caused a violation of Plaintiff's constitutional rights. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

### D. Claim Relating to Mail Interference

Prisoners enjoy a First Amendment right to send and receive mail. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). But isolated incidents of mail interference without any evidence of improper motive or resulting interference with the right to counsel or access to the courts do not give rise to a constitutional violation. See Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990); see also Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (temporary delay or isolated incident of delay in mail processing does not violate prisoner's First Amendment rights); Bach v. Illinois, 504 F.2d 1100, 1102 (7th Cir.) (isolated incident of mail

---

[4] The Court notes that there is no fundamental right to television in prison. See More v. Farrier, 984 F.2d 269, 271 (8th Cir.), cert. denied, 510 U.S. 819 (1993).

10

mishandling insufficient to state a claim under § 1983), cert. denied, 418 U.S. 910 (1974).

In order to state a First Amendment claim of mail interference under § 1983, Plaintiff must allege specific facts showing that Defendant Wright's actions of allegedly throwing Plaintiff's mail in the trash amounted to more than an isolated incident of mail interference. Accordingly, Plaintiff's claim against Defendant Wright relating to mail interference is dismissed with leave to amend. He may file an amendment to the complaint linking Defendant Wright to his allegations of wrongdoing. Plaintiff must allege specific facts showing how Defendant Wright actually and proximately caused the deprivation of his First Amendment rights. See Leer, 844 F.2d at 634.

### E. Claim Relating to Grievance Process

Plaintiff alleges that Defendant Mandel denied his 602 appeal. (Verified Compl. at 22.) Although there is a First Amendment right to petition government for redress of grievances, there is no right to a response or any particular action. See Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) ("prisoner's right to petition the government for redress . . . is not compromised by the prison's refusal to entertain his grievance."). Plaintiff has therefore failed to state a claim against Defendant Mandel. Accordingly, Plaintiff's claim against Defendant Mandel relating to the grievance process is dismissed with prejudice.

### III. Plaintiff's Motion for a TRO

Plaintiff has filed a document entitled "Plaintiff's Ex Parte Motion for Preliminary Injunction and Temporary Restraining Order." In his motion, he requests that "the Court issued a temporary restraining order," and not a preliminary injunction;[5] therefore, the Court construes his motion solely as a motion for a TRO.

A TRO may be granted without written or oral notice to the adverse party or that party's attorney only if: (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or the party's attorney can be heard in opposition, and (2) the applicant certifies in

---

[5] Before granting a preliminary injunction, notice to the adverse party is required. Fed. R. Civ. P. 65(a)(1). Therefore, a motion for preliminary injunction cannot be decided until the parties to the action are served. See Zepeda v. INS, 753 F.2d 719, 727 (9th Cir. 1983). Here, the Court notes that Defendants have not yet been served.

11

writing the efforts, if any, that have been made to give notice and the reasons supporting the claim that notice should not be required. Fed. R. Civ. P. 65(b). Neither is the case here.

Furthermore, Plaintiff filed the pending motion for a TRO while he was incarcerated at Corcoran. Plaintiff states that prison officials at Corcoran have "threatened to confiscate [his] personal property." (Mot. for TRO at 1.) He alleges that they "claim this act to be in response to Plaintiff's refusal to double cell . . . however the Plaintiff knows this is nothing more than retaliation for filing action's [sic] against prison officials." (Id. at 2.) He further alleges that he was informed by Corcoran Correctional Officer Gonsalez, who is "in active concert with the Defendants," that Officer Gonsalez was "instructed by his superiors in Sacramento to confiscate [Plaintiff's] property." (Pl.'s Certified Aff. at 1.) Therefore, Plaintiff requests the Court "issue a temporary restraining order preventing the Defendant's [sic] from confiscating the Plaintiff's property forthwith and that said order be a continuing one until the Court determines the issue as stated in the complaint." (Mot. for TRO at 4.) Because Corcoran is not in this judicial district, Plaintiff must present any claims regarding his conditions of confinement at that prison in the United States District Court for the Eastern District of California.

Furthermore, the Court notes that since Plaintiff filed his motion for a TRO, he has informed the Court that he has been transferred to Delano. The transfer to a different prison is important because it makes much of his requested relief moot. Accordingly, Plaintiff's motion for a TRO (docket no. 10) is DENIED as moot.

**IV.     Pro Se Prisoner Settlement Program**

The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a neutral magistrate judge for settlement proceedings. The proceedings will consist of one or more conferences as determined by Magistrate Judge Nandor Vadas. The conferences shall be conducted at California State Prison - Delano with Defendants and/or the representative for Defendants attending by videoconferencing if they so choose.

Good cause appearing, the present case will be REFERRED to Magistrate Judge Vadas for settlement proceedings pursuant to the Pro Se Prisoner Settlement Program. The proceedings shall take place within **one-hundred twenty (120) days** after the date of this Order; or as soon thereafter as

is convenient to the magistrate judge's calendar.  Magistrate Judge Vadas shall coordinate a time and date for a settlement proceeding with all interested parties and/or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the Court a report regarding the settlement proceedings.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's claims for injunctive relief are DISMISSED as moot.

2. Plaintiff has adequately alleged COGNIZABLE Eighth Amendment claims against Defendants Peterson, Speaker and Bullock for the use of excessive force and against Defendants McBride, Christ and Kelly for failing to intervene.

3. Plaintiff has adequately alleged COGNIZABLE Eighth Amendment claims against Defendants Peterson, Speaker, Bullock, McBride, Christ, Kelly and Patch for deliberate indifference to his medical needs.

4. Plaintiff has adequately alleged COGNIZABLE Eighth Amendment claims against Defendants Cook, Cruse, Thompson and Brown for deliberate indifference to his safety needs.

5. Plaintiff states COGNIZABLE retaliation claims against Defendants Cook and Cruse for their actions of placing Plaintiff in a "holding cell" after he refused to double cell.

6. Plaintiff's retaliation claims against Defendants Getz, Luckett, Brown, Tupy, Akin, Moulton, Cook and Cruse, based on their actions after Plaintiff informed them he filed complaints, are DISMISSED with leave to amend as indicated above.

7. Plaintiff's First Amendment claim of mail interference against Defendant Wright is DISMISSED with leave to amend as indicated above.

8. Within **thirty (30) days** of the date of this Order Plaintiff may file amended retaliation and First Amendment claims against the aforementioned Defendants (Plaintiff shall resubmit only those claims and not the entire complaint) as set forth above in Sections II(C) and (D) of this Order. He must clearly label the document an "Amendment to the Complaint," and write in the case number for this action.  The failure to do so within the thirty-day deadline will result in the dismissal of: (1) Plaintiff's retaliation claims against Defendants Getz, Luckett, Brown, Tupy, Akin, Moulton, Cook

and Cruse, relating to their actions after Plaintiff informed them he filed complaints; and (2) Plaintiff's First Amendment claim of mail interference against Defendant Wright.

9. Plaintiff's claim against Defendant Mandel relating to the grievance process is DISMISSED with prejudice.

10. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, copies of: (1) the second amended complaint as well as copies of all attachments thereto (docket no. 14); (2) a copy of this Order upon: **Defendants PBSP Associate Warden M. Cook; PBSP Correctional Sergeant S. L. Thompson; PBSP Correctional Lieutenant D. A. Christ; PBSP Correctional Captain G. Kelly; PBSP Correctional Officers J. Peterson, C. Speaker, M. D. Bullock, J. McBride, and J. Brown; PBSP Correctional Counselor K. Cruse; and PBSP Medical Technical Assistant J. T. Patch.** The Clerk shall also mail copies of these documents to the Attorney General of the State of California. Additionally, the Clerk shall serve a copy of this Order on Plaintiff.

11. In order to expedite the resolution of this case, the Court orders as follows:

a. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. In addition, no later than **thirty (30) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date their summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **forty-five (45) days** after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally,

14

> summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff is advised that if he fails to submit declarations contesting the version of the facts contained in Defendants' declarations, Defendants' version may be taken as true and the case may be decided in Defendants' favor without a trial. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

    c.    If Defendants wish to file a reply brief, they shall do so no later than **fifteen (15) days** after the date Plaintiff's opposition is filed.

    d.    The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

12. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

15

13. All communications by Plaintiff with the Court must be served on Defendants, or their counsel once counsel has been designated, by mailing a true copy of the document to Defendants or their counsel.

14. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

15. Extensions of time are not favored, though reasonable extensions will be granted. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

16. Plaintiff's "Plaintiff's Ex Parte Motion for Preliminary Injunction and Temporary Restraining Order" (docket no. 10), which has been construed as a motion for a TRO, is DENIED as moot.

17. This Order terminates Docket no. 10.

IT IS SO ORDERED.

DATED: September 30, 2008

SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\CR.07\Henderson2838.denyTRO&service&referVADAS.frm

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CURTIS LEE HENDERSON SR,

    Plaintiff,

v.

CALIFORNIA DEPARTMENT OF
CORRECTION et al,

    Defendant.

Case Number: CV07-02838 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 1, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Curtis Lee Henderson H-43488
California State Prison - Delano
P.O. Box 5101
Delano, CA 93216

Dated: October 1, 2008

    Richard W. Wieking, Clerk
    By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.07\Henderson2838.denyTRO&service&referVADAS.frm