1
2
3              UNITED STATES DISTRICT COURT

4          FOR THE NORTHERN DISTRICT OF CALIFORNIA

5                     OAKLAND DIVISION

6

7  CURTIS LEE HENDERSON, SR.,          Case No:  C 07-2838 SBA (PR)

               Plaintiff,            **ORDER ON MOTIONS IN LIMINE**
8                                    **AND DEFENDANTS' PRETRIAL**
       vs.                          **MOTIONS**
9
   J. PETERSON, C. SPEAKER, J.T. PATCH,   Dkt. 180, 183, 193, 222, 226
10  M.D. BULLOCK, S.L. THOMPSON, J.
   MCBRIDE, DA CHRIST, G. KELLY, J.
11  GETZ, J. BROWN, S. LUCKETT, R. TUPY,
   M. COOK, K. CRUSE, J. AKIN, J.
12  MOULTON, D. MANDEL, S. WRIGHT, ET.
   AL,
13
               Defendants.
14

15

16       Plaintiff Curtis Lee Henderson, a state prisoner currently incarcerated at California

17  State Prison, Corcoran, alleges that he was subjected to excessive force while housed at

18  Pelican Bay State Prison ("Pelican Bay") in 2006.  The Defendants remaining in this action

19  are Correctional Officers James Petersen ("Petersen"), Clay Speaker ("Speaker"), Michael

20  Bullock ("Bullock"), and David Christ ("Christ"), all of whom were employed by the

21  California Department of Corrections and Rehabilitation ("CDCR") at Pelican Bay at the

22  time of the incident.  A five-day jury trial is scheduled to commence on July 18, 2011.

23       The parties are now before the Court on the parties' respective motions in limine and

24  various other pending motions.  Dkt. 180, 183, 193, 222, 226.  The parties appeared for a

25  pretrial conference on July 12, 2011, at which time the Court heard argument on the

26  motions.  Having considered the papers received and the arguments, of counsel, the Court

27  enters the following rulings.

28

# I.   BACKGROUND

## A.   FACTUAL SUMMARY

The parties are familiar with the facts of this case, which are summarized herein only to the extent they are relevant to the instant motions.  According to Plaintiff, on August 16, 2006, Defendants Petersen and Speaker attempted to place him in a double cell with another inmate.  When Plaintiff refused, they handcuffed him and placed him in a cage.  Plaintiff began experiencing chest pains and informed Speaker that he needed to see a medical technical assistant ("MTA").  In response to Plaintiff's complaints, Petersen escorted Plaintiff to the unit rotunda where Speaker then searched him.  Speaker found an address book on Plaintiff's person which Petersen then kicked across the floor.  As Plaintiff bent over to pick up the address book, Petersen struck Plaintiff in his back and thighs with his baton.  Speaker joined in the fray, using his baton to strike Plaintiff about the skull, neck and shoulder blades.  Plaintiff attempted to escape the beating, at which point Petersen sprayed Plaintiff with pepper spray for seven to nine seconds.  Peterson then jumped on Plaintiff's back, while Speaker jumped on Plaintiff's legs.

Speaker and Petersen subsequently handcuffed Plaintiff tightly, causing him to lose circulation in his left arm and to suffer lacerations.  Speaker ordered Defendant Bullock to hold Plaintiff down.  Although Plaintiff pleaded with Defendant Christ and Correctional Officer Glenn Kelly for assistance, they walked away as the assault continued.  Bullock then began beating Plaintiff, who at that point was handcuffed and shackled, and then subsequently pulled Plaintiff off the floor by his handcuffs.  Bullock then took Plaintiff to the yard and forced him under a shower with freezing cold water.  Plaintiff complained that he could not feel his arms and requested to see a MTA.  Defendants allegedly refused to provide medical treatment for Plaintiff until other inmates complained on his behalf.

Defendants offer a markedly different version of events.  They claim that on the evening of the incident, Petersen and Speaker removed Plaintiff from his cell in response to his complaints of chest pain.  As the correctional officers waited for medical personnel to arrive in the rotunda, Speaker searched Plaintiff.  During the search, he discovered paper

towels and an address book in Plaintiff's clothing.  Believing that Plaintiff would be taken out of the unit for medical care, they confiscated his address book and told him that it would be returned later.  Plaintiff allegedly became irate, argumentative and aggressive with the officers.  The dispute escalated to a physical altercation, during which Petersen and Speaker hit Plaintiff with their batons and applied pepper spray to subdue him.  Defendants deny that their attack was unprovoked or that they engaged in an unreasonable application of force under the circumstances.

### B.   PROCEDURAL HISTORY

The operative pleading in this action is Plaintiff's Second Amended Complaint filed on February 28, 2008, which alleges claims under 42 U.S.C. § 1983 for excessive force and deliberate indifference to serious medical needs.  Dkt. 14.  On September 30, 2010, the Court granted Defendants' motion for summary judgment as to Plaintiff's claim for deliberate indifference, but denied the motion as to his claim for excessive force.  See 9/30/10 Order, Dkt. 117.  After locating pro bono counsel willing to represent Plaintiff, the Court issued an order on December 9, 2010, appointing Rachael E. Meny, Benedict Y. Hur, R. Adam Lauridsen and Sharif E. Jacob of Keker & Van Nest LLP as counsel for Plaintiff. On June 27, 2011, the parties stipulated to the dismissal of Glenn Kelley and Jeffrey McBride as party-defendants.  Dkt. 231.  In addition, Plaintiff dismissed with prejudice his claims for injunctive relief and for damages based on mental or emotional distress.  Id.

Plaintiffs and Defendants, respectively, have filed motions in limine in anticipation of trial.  Dkt. 222, 226.  In addition, Defendants have filed several other motions which are ripe for adjudication:  (1) Defendants' Motion to Revoke Plaintiff's In Forma Pauperis Status, Dkt. 180; (2) Defendants' Motion for Relief from Non-Dispositive Pretrial Order of Magistrate Judge, Dkt. 193; and (3) Defendants' Motion to Bifurcate Trial, Dkt. 183.

//

//

//

## II.      PLAINTIFFS' MOTIONS IN LIMINE

### A.      MOTION NO. 1: PRIOR CONVICTIONS

Plaintiff moves to exclude evidence of his juvenile adjudications and misdemeanor and felony convictions he suffered as an adult on the grounds that they are not relevant to any issue at trial, and that their admission at trial would be unduly prejudicial.  Pl.'s Mots. in Limine ("Pl.'s Mot.") at 1-4, Dkt. 226.  His adult criminal convictions are summarized as follows:

- 1989: Cal. Pen. Code § 459 (misdemeanor burglary);

- 1989: Cal. Pen. Code § 496 (misdemeanor receiving stolen property)

- 1989: Cal. Pen. Code § 459 (misdemeanor attempted burglary)

- 1990: Cal. Veh. Code § 23153(b) (felony causing bodily injury while driving under the influence);

- 1992: Cal. Pen. Code § 187 and § 12022.5(a) (felony first degree murder with personal use of a firearm); and

- 1992: Cal. Pen. Code § 211 and §§ 122022.5(a), 12022.7 (felony robbery with personal use of a firearm, inflicting great bodily injury on a person other than an accomplice).

Id. at 1.  At the pretrial conference, Defendants confirmed that they are not seeking to admit Plaintiff's juvenile adjudications or his misdemeanor convictions.  Therefore, the only dispute remaining before the Court concerns whether Plaintiff's adult felony convictions from 1990 and 1992 are admissible for purposes of impeachment.  Defs.' Opp'n to Pl.'s Mots. in Limine ("Def.'s Opp'n") at 1, Dkt. 237.

Because Plaintiff's felony convictions from 1990 and 1992 occurred well over ten years ago, they are presumptively inadmissible under Federal Rule of Evidence 609(b), absent a finding that their probative value substantially outweighs the prejudicial effect of presenting evidence of the convictions to the trier of fact.  Rule 609(b) provides that:

> Evidence of a conviction under this rule is not admissible *if a period of more than ten years has elapsed since the date of the conviction* ... unless the court determines, in the interests of justice, that the probative value of the conviction supported by

specific facts and circumstances substantially outweighs its
prejudicial effect.

Fed. R. Evid. 609(b) (emphasis added); see United States v. Bay, 762 F.2d 1314, 1317 (9th
Cir.1984) ("Evidence of a conviction more than ten years old is presumptively inadmissible
as too remote.").  The advisory committee notes to Rule 609(b) "clearly state 'that
convictions over 10 years old will be admitted very rarely and only in exceptional
circumstances.'"  United States v. Bensimon, 172 F.3d 1121, 1126-1127 (9th Cir. 1999)
(quoting in part Fed. R. Evid. 609(b) advisory committee's notes).

In their opposition, Defendants completely fail to acknowledge the presumption
under Rule 609(b) against admitting convictions over ten years old, and instead, summarily
assert that Plaintiff's prior felony convictions are "highly relevant" to his claim that he was
the victim of an unprovoked attack.  Defs.' Opp'n to Pl.'s Mot. in Limine ("Pl.'s Opp'n") at
2, Dkt. 237.  The flaw in Defendants' argument is that it never explains *how* the convictions
are relevant.  Moreover, Defendants fail to demonstrate the probative value of the
convictions through a discussion the "specific facts and circumstances" pertaining thereto,
as required by Rule 609(b).  The paucity of such an explanation underscores that the actual
purpose of the convictions is to imply that Plaintiff has a propensity to engage in violent
conduct, and therefore, is likely to have instigated the altercation.  But, any attempt to
utilize Plaintiff's convictions for such purpose contravenes Federal Rule of Evidence
404(b), which provides that "[e]vidence of other *crimes*, wrongs, or acts is *not admissible*
to prove the character of a person in order to show action in conformity therewith."  Fed. R.
Evid. 404(b) (emphasis added).[1]  Accordingly, the Court GRANTS Plaintiff's motion in
limine no. 1 to exclude evidence of or reference to his felony convictions and DENIES the
motion as moot with respect to Plaintiff's juvenile adjudications and misdemeanor
convictions.

---

[1] Defendants ignore Rule 404(b), but assert that evidence of Plaintiff's alleged
violent disposition is admissible under Rule 404(a)(2).  Pl.'s Opp'n at 3.  Defendants
overlook that Rule 404(a)(2) applies "[i]n a *criminal* case."  Fed. R. Evid. 404(a)(2)
(emphasis added).

**B.**     **MOTION NO. 2:  RESTRAINTS/COURT ATTIRE**

Plaintiff's motion in limine no. 2 and Defendants' motion in limine no. 6 address whether Plaintiff should be compelled to appear in court in prison garb and shackled.  At the pretrial conference, the parties reached an agreement that Plaintiff could appear in civilian attire and without restraints, provided that security personnel are present in the courtroom.  In view of the parties' agreement, the Court DENIES Plaintiff's Motion in Limine No. 2 and Defendants' motion in limine no. 6 as moot.

**C.**     **MOTION NO. 3:  PLAINTIFF'S PRISON DISCIPLINARY HISTORY**

Next, Plaintiff moves to exclude his prison disciplinary records on the ground that such evidence is inadmissible and unduly prejudicial character evidence.  Pl.'s Mot. at 6.  Defendants respond that since Plaintiff "is a violent and disruptive inmate," such records are admissible to impeach Plaintiff in the event he testifies.  Defs.' Opp'n at 4.  The Court agrees with Plaintiff that the records are inadmissible.

The salient question presented is whether Defendants' application of force was reasonable under the circumstances presented.  See Graham v. Connor, 490 U.S. 386, 394-96 (1989) (setting forth legal standard in excessive force cases).  Defendants have made no particular showing that evidence relating to his disciplinary history is probative of this issue, and simply make the ipse dixit assertion that the evidence is relevant.  Given the lack of such a showing, the admission of Plaintiff's disciplinary records is improper.  See Hynes v. Coughlin, 79 F.3d 285, 290-91 (2d Cir. 1996) ("where there is no tenable basis for contending that there was an issue such as intent or knowledge, it is error to admit an inmate's disciplinary record to support the inference that he had a 'penchant for violent conduct.'"); Seals v. Mitchell, No. C 04-3764 NJV, 2011 WL 1399245, at *6 (N.D. Cal. April 13, 2011) (granting prisoner's motion in limine to exclude his prison disciplinary record because it is "not relevant, is prejudicial, constitutes inadmissible character evidence of other wrongs or acts, and is inadmissible hearsay.") (citing Fed. R. Evid. 402, 403, 404(b), & 802) (Vadas, J.).  The Court therefore GRANTS Plaintiff's motion in limine no. 3 to exclude evidence of or reference to Plaintiff's prison disciplinary record.

**D.** **MOTION NO. 4: PLAINTIFF'S PRISON SENTENCE**

Pursuant to Rule 403, Plaintiff moves to exclude any evidence of or reference to Plaintiff's current prison sentence or incarceration based on his 1992 conviction on the basis that its prejudicial effect would substantially outweigh its probative value. Defendants do not oppose this motion in limine.  Therefore, the Court GRANTS Plaintiff's motion in limine no. 4.

**E.** **MOTION NO. 5: PAYMENT OF MEDICAL EXPENSES**

Plaintiff moves to exclude evidence that the CDCR paid for his medical treatment for injuries incurred as a result of the August 6, 2006 incident.  "Under the collateral source rule, benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages." McLean v. Runyon, 222 F.3d 1150, 1155-1156 (9th Cir. 2000) (internal quotations marks and citations omitted); Gill v. Maciejewski, 546 F.3d 557, 564-65 (8th Cir. 2008) (applying collateral source rule in § 1983 action).  The rationale for the collateral source rule is to prevent the defendant from receiving a windfall by avoiding liability for damages suffered by the plaintiff as a result of the defendant's conduct.  See Siverson v. United States, 710 F.2d 557, 560 (9th Cir. 1983) (finding that the purpose of collateral source doctrine is to prevent the defendant from receiving a windfall, irrespective of whether application of the doctrine results in a double recovery for the plaintiff); Chavez v. Poleate, No. No. 2:04-CV-1104 CW, 2010 WL 678940, at 2 n.2 (D. Utah Feb. 23, 2010) (applying collateral source rule in a prisoner's § 1983 action against prison guard where state paid for plaintiff's medical expenses).

Defendants contend that the collateral source doctrine applies only where the injured party paid for the insurance, program or policy that paid the benefit, and that because Plaintiff is a prisoner, he could not have contributed to the state fund used to pay for his medical care.  Defs.' Opp'n at 5-6.  The cases cited by Defendants do not support their proposition.  In Green v. Denver & Rio Grande Western R. Co., 59 F.3d 1029 (10th Cir. 1995), the court merely observed that cases from the Tenth Circuit have "treated payments from the public treasury, at least when funded by a tax scheme to which the injured party

1   contributed, as from a collateral source." Id. at 1032.  The court did not hold or suggest, as

2   Defendants intimate, that application of the collateral source rule is dependent on whether

3   the plaintiff actually paid any taxes.  Likewise, the Ninth Circuit in McLean did not hold

4   that the plaintiff must pay into the fund used to compensate him for his injuries in order for

5   the collateral source doctrine to apply.  Rather, the court held that the payment of workers'

6   compensation benefits to an injured federal employee did not qualify as a collateral source

7   because the defendant "pays both the damages award and the workers' compensation

8   benefits." McLean, 222 F.3d at 1156.

9       Alternatively, Defendants contend that the collateral source rule is inapplicable

10   ostensibly because the CDCR's payment of Plaintiff's medical expenses is not a collateral

11   source.  Defs.' Opp'n at 6 (citing McClean, 222 F.3d at 1156).  Defendants assert that since

12   the individual Defendants are being sued in their personal and official capacities, the CDCR

13   necessarily will pay any damage award rendered in this case.  Id.  Defendants fail to

14   provide any factual support for this assertion.[2]  In addition, they ignore that the state is not

15   automatically obligated to indemnify its employees in civil suits in all instances.  See Cal.

16   Gov't Code § 825(a).  Defendants' position also is at odds with the parties' stipulation, as

17   set forth in their joint proposed jury instruction no. 22, which states that "[t]his is not an

18   action against the State of California or against the California Department of Corrections

19   and Rehabilitation….   Whether the State of California would or would not reimburse the

20   defendants for any damages is irrelevant and should not be considered."  Dkt. 212 at 46.

21   Thus, for the reasons set forth above, the Court GRANTS Plaintiff's motion in limine no. 6

22   to exclude evidence of collateral source payments.

23       **F.   MOTION NO. 6:  OTHER LAWSUITS**

24       Plaintiff moves, pursuant to Rule 403, to preclude Defendants from presenting

25   evidence concerning other complaints and lawsuits initiated by him that are unrelated to the

26

27        [2] During the hearing on July 12, 2011, counsel for Plaintiff acknowledged that
Plaintiff's pro se complaint alleged that Defendants were liable in both their personal and
official capacities.  However, he clarified that Plaintiff's claims are based on Defendants'

28   personal capacities only.

incident forming the basis of this action.  As a general matter, unless the prior lawsuits have been shown to be fraudulent, the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias.  See Seals, 2011 WL 1399245, at *5 (granting motion in limine to exclude references to plaintiff's other lawsuits or grievances under Rule 403 and 404(b)) (citations omitted).  "In addition, evidence of Plaintiff's litigiousness is inadmissible character evidence."  Id.

Here, Defendants make no showing that Plaintiff's prior lawsuits were fraudulent or are related to this case, and merely assert that "[his] extensive litigation history is admissible because it goes to [his] ability to be truthful and whether he has a tendency to file unmeritorious litigation."  Defs.' Opp'n at 7.  Defendants fail to provide any factual or legal support for these bare assertions.  In addition, Defendants' theory of admissibility reveals that they are seeking to admit such evidence for the improper purpose of attacking Plaintiff's character, in violation of Rule 404(b).  Thus, the Court GRANTS Plaintiff's motion in limine no. 6 to exclude evidence of or reference to Plaintiff's other complaints and lawsuits.

### G. MOTION NO. 7:  EXTRINSIC EVIDENCE RELATING TO DANIEL VASQUEZ

Daniel Vasquez is Plaintiff's expert on use-of-force.  He is the former Warden of San Quentin State Prison and Soledad State Prison, both of which are operated by the CDCR.  Mr. Vasquez allegedly left the CDCR in or about 1994 following concerns regarding his job performance, which included allegations of preferential treatment of Latino employees and bias against African-American employees, delays in processing new prisoners and his improper personal use of CDCR telephones.  See Jacob Decl. Ex. D at 1064:12-1067:11, Dkt. 227.  When cross-examined about these matters at an unrelated trial before Judge Susan Illston against the CDCR in 2009 in the matter of Lira v. Cate, C 00-0905 SI, Mr. Vasquez denied having been accused of any improprieties or that he left the CDCR under threat of being demoted.  Id.

In motion in limine no. 7, Plaintiff moves to exclude extrinsic evidence that Defendants intend to offer at trial to impeach Mr. Vasquez.  Specifically, Plaintiff seeks to

preclude Defendants from calling David Tristan, Mr. Vasquez's former superior at the

CDCR, to testify regarding the reasons for Mr. Vasquez's departure from the CDCR.  See

Defs.' Witness List ¶ B.1, Dkt. 199.  Plaintiff also seeks to exclude unspecified

documentary evidence offered for the same purpose.[3]  As support for his in limine motion,

Plaintiff relies on Federal Rule of Evidence 608(b), which states:

> **(b) Specific instances of conduct.**  *Specific instances of the conduct of a witness*, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, *may not be proved by extrinsic evidence*.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be *inquired into* on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed. R. Evid. 608(b) (emphasis added); United States v. Abel, 469 U.S. 45, 55 (1984)

(noting that although Rule 608(b) "prohibits the cross-examiner from introducing extrinsic

evidence of the witness' past conduct," it "allows a cross-examiner to impeach a witness by

asking him about specific instances of past conduct, other than crimes covered by Rule 609,

which are probative of his veracity or 'character for truthfulness or untruthfulness.'").

The Court agrees that Rule 608(b) forecloses any attempt by Defendants to impeach

Mr. Vasquez through the presentation of witness testimony or documentary evidence

regarding his job performance and reasons for his departure from the CDCR.  Notably, in

neither their opposition brief nor during oral argument did Defendants cite any authority

holding that the impeachment of Mr. Vasquez through the presentation of extrinsic

evidence is proper.  Accordingly, the Court GRANTS Plaintiff's motion in limine no. 7 to

exclude extrinsic evidence, including witness testimony and documentary evidence, offered

to impeach Mr. Vasquez.

---

[3] At the pretrial conference, counsel for Defendants stated their desire to impeach Mr. Vasquez with telephone records generated during his employment with the CDCR. Counsel states that such records contradict Mr. Vasquez' claim that he did not owe the CDCR any money for personal telephone calls at the time he resigned.  Counsel did not have the records available for review, however.

**H.** **MOTION NO. 8: QUESTION OF DANIEL VASQUEZ**

In motion in limine no. 8, Plaintiff seeks, pursuant to Rule 403, to preclude Defendants from cross-examining Mr. Vasquez regarding his alleged favoritism of Latino employees and his failure to reimburse the CDCR for approximately $4,000 worth of personal telephone calls.  Pl.'s Mot. at 12.  Defendants respond that they should be allowed to present evidence of and cross-examine Mr. Vasquez regarding the aforementioned matters to demonstrate that he is untruthful and is biased against the CDCR.

As a general matter, Rule 608(b) permits a party to impeach a witness by examining him or her about specific instances of past conduct to the extent that they are probative of his or her character for truthfulness or untruthfulness.  Abel, 469 U.S. at 55.  Defendants' opposition fails to articulate how the circumstances of Mr. Vasquez's departure from the CDCR are "probative of truthfulness or untruthfulness."  See Fed. R. Evid. 608(b).[4]  Thus, at the pretrial conference, the Court asked Defendants for clarification on this issue.  Defendants responded that Mr. Vasquez had testified inconsistently at the Lira trial before Judge Illston and his deposition in this case regarding whether he repaid the CDCR for making personal telephone calls.  When questioned further by the Court, however, counsel neither was able to recite the precise trial and deposition testimony that she claimed were inconsistent nor could she indicate where in the record the relevant transcripts could be found.  Consequently, the Court finds that Defendants have failed to lay a sufficient foundation to permit them to cross-examine Mr. Vasquez under Rule 608(b) regarding specific instances of conduct leading to his departure from the CDCR.

Notwithstanding Rule 608(b), a party may cross-examine a witness to show *bias*. United States v. Ray, 731 F.2d 1361, 1364 (9th Cir. 1984) ("Rule 608(b) does not bar introduction of evidence to show that the witness is biased.  It regulates only the

---

[4] In Court, defense counsel argued that Mr. Vasquez testified in the Lira trial that he still owed the CDCR for making personal telephone calls, but that during his deposition in this case, he contradicted himself on this point.  When questioned further by the Court, however, counsel could neither recite the precise trial and deposition testimony that she claimed was inconsistent nor could she indicate where in the record the relevant transcripts could be found.

admissibility of evidence offered to prove the truthful or untruthful character of a witness.").  Information that Mr. Vasquez resigned from the CDCR due to concerns regarding his performance and conduct certainly may bear upon his *bias* against the CDCR. However, Defendants have failed to proffer the requisite foundation to permit them to engage in such questioning on cross-examination.  See United States v. Lo, 231 F.3d 471, 483 (9th Cir. 2000) (holding that the trial court "was well within her discretion in limiting" highly speculative cross-examination suggesting that a prosecution witness had committed bankruptcy fraud where "the evidence of bankruptcy fraud on which Lo sought to rely was exceedingly thin").  Given the lack of foundation for Defendants' proposed cross-examination, coupled with the remoteness in time in which such conduct allegedly occurred, the Court, in its discretion, precludes Defendants from cross-examining Mr. Vasquez regarding any of the specific instances of misconduct allegedly leading to his departure from the CDCR.  See Lo, 231 F.3d at 483; Fed. R. Evid. 403.  Accordingly, the Court GRANTS Plaintiff's motion in limine no. 8.[5]

## I.   MOTION NO. 9:  PLAINTIFF'S NON-RETAINED EXPERT WITNESSES

Plaintiff moves in limine for an order excluding any expert testimony on the issue of causation from Drs. Pappanaickenpa Ramani Chandrasekaran, Gregory M. Duncan and Larry J. Maukonen, each of whom provided medical care to Plaintiff while he was incarcerated at Pelican Bay.  During the pretrial conference, Defendants confirmed and represented to the Court that they will *not* elicit opinion testimony from these witnesses on matters beyond their examination, diagnosis and treatment of Plaintiff or opinion testimony on the issue of causation.  Plaintiff acknowledged that in light of Defendants' representation, there was no longer a need to depose these individuals.  There no longer being any actual dispute between the parties regarding the permissible scope of these doctors' testimony, the Court DENIES Plaintiff's motion in limine no. 9 as moot.

---

[5] Of course, Defendants are free to probe Mr. Vasquez's bias on grounds other than those raised by Plaintiff's motion in limine.

## III.    DEFENDANTS' MOTIONS IN LIMINE

### A.    MOTION NO. 1:  EVIDENCE OF PLAINTIFF'S CUBITAL TUNNEL/ULNAR ENTRAPMENT

Defendants move to exclude "all evidence regarding [Plaintiff]'s cubital tunnel syndrome/bilateral entrapment" on the ground that "[his] medical expert, Dr. Nicole Schneider, is the only witness who links this injury to the August 16, 2006 use-of-force incident and Dr. Schneider is not qualified to testify regarding cubital tunnel syndrome/bilateral entrapment."  Defs.' Mot. at 1.  The gravamen of Defendants' motion is that Dr. Schneider is not qualified to render such opinions because she is not a specialist and cannot recall having rendered medical treatment for such conditions.  Id. at 1-3.

"Rule 702 requires that a testifying expert be 'qualified as an expert by knowledge, skill, experience, training, or education.'"  Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004) (quoting in part Fed. R. Evid. 702).  The rule contemplates "a *broad* conception of expert qualifications," and is "intended to embrace more than a narrow definition of qualified expert."  Id. (internal quotation marks and citations omitted).  The determination of whether an individual qualifies as an expert is left to the discretion of the district court.  Id.

Defendants first contend that Dr. Schneider is not qualified to render any opinions regarding Plaintiff's nerve injuries because she is not a board-certified specialist in that area of medicine.  A physician, however, is qualified to express opinions about other medical fields in which she is not a specialist.  E.g., Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (holding that a physician was qualified to give a medical opinion as to a patient's mental state even though he was not a psychiatrist).  As such, a medical doctor's expert testimony may not be excluded for lack of specialization.  Doe v. Cutter Biological, Inc., 971 F.2d 375, 385 (9th Cir. 1992) ("The fact that the experts were not licensed hematologists does not mean that they were testifying beyond their area of expertise. Ordinarily, courts impose no requirement that an expert be a specialist in a given field,

1    although there may be a requirement that he or she be of a certain profession, such as a

2    doctor.").

3         As an ancillary matter, Defendants argue that Dr. Schneider is not qualified to render

4    opinions concerning Plaintiff's nerve injuries, as she has not treated any patients suffering

5    from cubital tunnel syndrome or ulnar nerve entrapment, and that her knowledge of these

6    conditions is derived from consultation with a colleague.  Defs.' Mot. at 1.[6]  Defendants fail

7    to cite any authority for the proposition that a medical expert must have provided a

8    particular form of clinical treatment in order to qualify as an expert.  Moreover, there is

9    nothing improper with Dr. Schneider's formulation of an opinion based on her consultation

10   with another physician.  See Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 781 (3rd

11   Cir. 1996) (physician could testify regarding findings contained in a pathology report

12   prepared by pathologists).

13        At bottom, the veracity of the assumptions underlying Dr. Schneider's opinions is

14   perhaps germane to the weight, as opposed to the admissibility, of her opinions.

15   Defendants will have ample opportunity at trial to challenge the bases of her opinions

16   through cross-examination.  See Hangarter, 373 F.3d at 1017 n.14 ("The factual basis of an

17   expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to

18   the opposing party to examine the factual basis for the opinion in cross-examination.")

19   (brackets, internal quotations and citation omitted); Bergen v. F/V St. Patrick, 816 F.2d

20   1345, 1352 n.5 (9th Cir. 1987) ("the weakness in the underpinnings of [expert] opinions

21   may be developed upon cross-examination," as "such weakness goes to the weight and

22   credibility of the testimony" as opposed to its admissibility) (internal quotations and

23

24

25

26
         _____
27            [6] Dr. Schneider formally consulted with Dr. Christian Foglar, an orthopedic surgeon
     and trauma specialist at O'Connor and El Camino Hospitals. See Jacob Decl. Ex. A, at
28   17:15-18:16.  Dr. Foglar opined that Plaintiff developed symptomatic carpal and cubital
     tunnel syndromes as a result of the force applied by Defendants.  See id. at 18:8-15.

citation omitted).[7]  Defendants' motion in limine no. 1 to exclude the expert testimony of Dr. Schneider regarding Plaintiff's cubital tunnel syndrome and bilateral ulnar entrapment is DENIED.

### B.    MOTION NO. 2:  CARPAL TUNNEL SYNDROME

In their second motion in limine, Defendants move to exclude all evidence regarding Plaintiff's carpal tunnel syndrome "because … Dr. Nicole Schneider [] is the only witness that links this injury to the August 16, 2006, use-of-force incident and Dr. Schneider is not qualified to testify about carpal tunnel syndrome."  Pl.'s Mot. at 3.  Plaintiff's arguments regarding the qualifications of Dr. Schneider are the same as those discussed above in connection with Defendants' first motion in limine.  Thus, for the reasons discussed above, the Court DENIES Defendants' motion in limine no. 2.

### C.    MOTION NO. 3:  DR. SCHNEIDER'S TESTIMONY RE CAUSE OF PLAINTIFF'S INJURIES

Defendants move to preclude Dr. Schneider from testifying about the types of injuries caused by expandable batons.  Dr. Schneider opined that Plaintiff's injuries were consistent with his being struck by a baton.  Mossler Decl. Ex. B ¶¶ 8-10, Dkt. 223. According to Defendants, Dr. Schneider's admission that she is not specifically familiar with the use of batons in a correctional facility or expandable batons, in particular, renders her unqualified to render expert testimony on the cause of Plaintiff's injuries.  Defs.' Mot. at 5.  The Court disagrees.  See Smith v. BMW N. Am., Inc., 308 F.3d 913, 919 (8th Cir. 2002) (finding that district court erred in excluding doctor from testifying regarding the cause of plaintiff's neck injury following the deployment of an airbag on the basis that he was not an expert in physics, biophysics or engineering).  To the contrary, courts routinely allow physicians to testify regarding the cause of an injury.  See United States v. Frazier,

---

[7] Defendants also assert, without citation to any legal authority or presentation of any reasoned analysis, that "Dr. Schneider's long-standing personal relationship with Plaintiff's counsel is highly relevant to whether she is qualified to be an expert witness." Defs.' Reply at 4.  However, Defendants have failed to present facts sufficient to persuade the Court that their relationship renders her unqualified to testify as an expert.

387 F.3d 1244, 1297 n.15 (11th Cir. 2004) (collecting cases).[8]  The Court finds no merit to

Defendants' arguments, and thus, DENIES Defendants' motion in limine no. 3.

### D.    MOTION NO. 4:  PLAINTIFF'S TESTIMONY

Defendants move to preclude Plaintiff from personally testifying as to the cause of

his cubital tunnel syndrome and bilateral ulnar entrapment on the ground that such

testimony would constitute improper medical opinion.  Defs.' Mot. at 5-6.  In his response,

Plaintiff confirms that he does not intend to offer opinion testimony regarding the medical

etiology of his injuries.  Rather, he plans to testify regarding the facts and circumstances

surrounding the August 16, 2006, incident, and the pain he suffered thereafter.  Pl.'s Opp'n

at 7.  At the hearing, however, Plaintiff's counsel stated that he intends to elicit from

Plaintiff hearsay statements from his treating physicians regarding his diagnosis.  Notably,

counsel indicated that he intended to offer such statements for the truth of the matter

asserted; namely, that he, in fact, has cubital tunnel and carpal tunnel syndrome.  Thus, to

the extent that Plaintiff intends to offer hearsay statements from his physicians for a hearsay

purpose, Defendants' motion in limine no. 4 is GRANTED.

### E.    MOTION NO. 5:  EXPERT TESTIMONY RE USE OF FORCE

Defendants move to exclude Plaintiff's use-of-force expert, Daniel Vasquez, from

offering opinion testimony in this case.  Defendants contend that Mr. Vasquez is not

qualified to offer expert opinions on use-of-force because his only experience with this

issue allegedly consists of his administrative review of use-of-force reports while working

for the CDCR between 1970 and 1994.  Defs. Mot. at 7.  In addition, Defendants claim that

Mr. Vasquez never attended a correctional officer academy, carried or been trained on the

use of a baton or used pepper spray when he worked as a correctional officer in the 1960's,

---

[8] In their reply, Defendants further argue that since the use of a baton is not disputed, there is no need for Dr. Schneider's testimony.  Defs.' Reply at 5, Dkt. 244.  The Court does not consider new arguments presented for the first time in a reply brief.  See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).  That aside, the issue for the jury is not limited to whether a baton was used, but rather, whether the amount of force used was reasonable.

worked at Pelican Bay or reviewed any use-of-force reports for incidents occurring at that facility during the relevant time-frame.  Id.

Defendants' challenge to Mr. Vasquez's qualification is unavailing.  Mr. Vasquez has over thirty-six years of corrections experience—including more than a decade as the Warden at San Quentin and Soledad State Prisons, eight years on the State Board of Corrections, four years as Director of Corrections for Santa Clara County, two years as Warden at the largest Corrections Corporation of America facility in California, and fifteen years as a corrections expert.  See Jacob Decl. Ex. J.  Mr. Vasquez's collective experience "lays at least the *minimal* foundation of knowledge, skill, and experience required in order to give 'expert' testimony" necessary to offer expert opinions on the use-of-force in a prison setting.   See Hangarter, 373 F.3d at 1016 (expert who lacked specialized knowledge of insurance bad faith claims nonetheless could testify on claims adjustment standards in the context of an insurance bad faith claim based on his extensive experience in the insurance industry and evaluating insurance claims); United States v. Brooks, 610 F.3d 1186, 1196 (9th Cir.2010) ("The fact that [the agent] lacked an advanced degree, supervisory experience, previous experience as an expert witness, or relevant publications did not render [him] unfit to provide expert testimony.") (citation omitted).

It also is noteworthy that other courts have concluded that experts with experience similar to Mr. Vasquez's qualify as experts in excessive-force cases.  See, e.g., Champion v. Outlook Nashville, Inc., 380 F.3d 893, 908 (6th Cir. 2004) (plaintiff's excessive-force expert was police procedures and practices instructor); Cotton v. City of Eureka, No. C 08-4386 SBA, 2010 WL 5154945, at *13 (N.D. Cal. Dec. 14, 2010) (rejecting defendants' argument that plaintiff's expert was "not qualified to opine on the use of force for an incident occurring in 2007 because he has not received any training on the use of force since his retirement in 1993.") (Armstrong, J.); Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1148 (N.D. Cal. 2009) (former county sheriff who retired sixteen years before testifying as an expert qualified as excessive-force expert) (James, J.).  Defendants will have a full opportunity at trial to challenge the credibility of Mr. Vasquez's opinions

1  through appropriate cross-examination.  Defendants' motion in limine no. 5 to preclude Mr.

2  Vasquez's from testifying as a use-of-force expert is DENIED.[9]

3       **F.**     **MOTION NO. 6:  SHACKLING AT TRIAL**

4       Defendants' motion in limine no. 6 to have Plaintiff remain shackled during trial is

5  DENIED as moot.

6       **G.**     **MOTION NO. 7:  EXHAUSTION REQUIREMENT**

7       Defendants move to bar Plaintiff's claim for damages to the extent it is based upon

8  Defendant Bullock's allegedly having lifted Plaintiff off the floor by the chain between his

9  handcuffs.  They assert that Plaintiff failed to exhaust this claim through the prison's

10  administrative grievance process, and therefore, the claim cannot be considered by the

11  Court.  Defs.' Mot. at 11.[10]  The Court disagrees.

12       Under the Prison Litigation Reform Act of 1995 ("PLRA"), prisoners seeking relief

13  under § 1983 must first exhaust all available administrative remedies prior to bringing suit.

14  42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 84 (2006).  In order to exhaust

15  administrative remedies, the prisoner must submit a complaint which affords prison

16  officials a full and fair opportunity to address the prisoner's claims.  Id. at 90, 93.  The

17  exhaustion requirement is not jurisdictional, but rather creates an affirmative defense that a

18  defendant must raise in a unenumerated Rule 12(b) motion.  Wyatt v. Terhune, 315 F.3d

19  1108, 1119 (9th Cir. 2003).  The defense is waived if not timely raised by the defendant.

20  Lira v. Herrera, 427 F.3d 1164, 1171 (9th Cir. 2005).

21       In the instant case, the Court finds that Defendants have waived their affirmative

22  defense of non-exhaustion with respect to this particular claim.  Defendants failed to raise

23  ───────────────

24      [9] Defendants also object to any attempt by Mr. Vasquez to offer legal opinions as well as any opinions regarding the causation and treatment of Plaintiff's elbow and wrist

25  injuries or the credibility of Defendants and correctional officials.  Defs.' Mot. at 8.  In his opposition, Plaintiff confirms that he does not intend to elicit such testimony from Mr. Vasquez.  Pl.'s Opp'n at 11-12.  Based on Plaintiff's representation, Defendants' motion in

26  limine with respect to these particular opinions is DENIED as moot.

27      [10] There is no dispute that Plaintiff properly exhausted his claim that Defendants used excessive force on him on August 16, 2006, though the specific fact of Bullock lifting

28  Plaintiff up by his handcuffs was not mentioned in his administrative complaint.

the issue of exhaustion in an unenumerated Rule 12(b) motion, and the time for filing dispositive motions has passed.  Waiver aside, Defendants cannot recast their exhaustion argument under the guise of a motion in limine.  See Natural Res. Defense Council v. Rodgers, No. CIV-S-88-1658 LKK, 2005 WL 1388671, 1 (E.D. June 9, 2005) ("[m]otions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues."); see also C&E Servs., Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008) (stating that a motion in limine should not be used to argue that "an item of damages may not be recovered because . . . that is a function of a motion for summary judgment").  The Court thus DENIES Plaintiff's motion in limine no. 7.

### H.    MOTION NO. 8:  MEDICAL RECORDS

Defendants object to Plaintiff's having designated his medical records as "confidential."  Defs.' Mot. at 12.  This concern is now moot because Plaintiff has agreed to lift the confidentiality designations on the medical records list on Plaintiff and Defendants' exhibits lists.  Pl.'s Opp'n at 15.  Accordingly, the Court DENIES Defendants' motion in limine no. 8 as moot.[11]

### I.    MOTION NO. 9:  OTHER INMATE APPEALS

Defendants object to Plaintiff's attempt to admit complaints from other inmates. Plaintiff has agreed to remove these complaints for his exhibits list.  Therefore, the Court DENIES as moot Defendants' motion in limine no. 9.

### J.    MOTION NO.  10:  TESTIMONY FROM OTHER INMATES

In their final motion in limine, Defendants object to Plaintiff's anticipated plan to call thirty-five inmate witnesses during trial.  Defs.' Mot. at 13.  In response, Plaintiff indicates that he does not intend to call any inmate witnesses other than himself.  Pl.'s Opp'n at 15; Pl.'s Am. Witness List, Dkt. 232.  Therefore, the Court DENIES as moot Defendants' motion in limine no. 10.

---

[11] In their reply, Defendants argue for the first time that the confidentiality designation should be lifted from all of Plaintiff's medical records relating to his injury.  As noted, the Court does not consider new arguments presented in reply brief.  See Zamani, 491 F.3d at 997.

# IV.   OBJECTIONS TO DISCOVERY EXCERPTS

On February 2, 2011, the Court issued its Order for Pretrial Preparation, which specifies, inter alia, that designations of discovery excerpts were due to be filed by June 14, 2011, in accordance with the following:

> e.   Designation of Discovery Excerpts
>
> Each party expecting to use discovery excerpts as part of its case in chief shall serve and file with the Court a statement identifying <u>(1) by witness and page and line, all deposition testimony and (2) by lodged excerpt, all interrogatory answers and request for admissions to be used as part of its direct case. Each interrogatory answer intended to be offered as an exhibit shall be copied separately and marked as an exhibit.</u> The original of any deposition to be used at trial must be produced at the time of trial, as well as a copy for the Court. Counsel shall indicate any objections to the use of these materials and advise the Court that counsel has conferred respecting such objections.

2/2/11 Order ¶ G.2.e, Dkt. 142 (emphasis added).  In accordance with that order, Plaintiff and Defendants timely filed their respective designations, among other pretrial filings.  Dkt. 216 and 218.   The Court now considers the parties respective objections to the other's designation of discovery excerpts.[12]

## A.   PLAINTIFF'S OBJECTIONS TO DEFENDANTS' DESIGNATION OF DISCOVERY EXCERPTS

On June 21, 2011, Plaintiff filed objections to certain of Defendants' discovery designations.  Dkt. 229.  In its objections, Plaintiff *expressly* identifies *each* of Defendants' discovery designations at issue, and indicates whether he objects to the designation, and if so, the legal basis of his objection.  In response to some of Defendants' designations, Plaintiff has made a counter-designation of discovery excerpts, which identifies the proposed additional deposition testimony by page and line.  Id.

---

[12] The Court defers consideration of the parties' objections to their exhibit lists until trial.  In the interim, the parties are directed to meet and confer regarding any remaining objections.  Objections to exhibits will not be considered unless the parties first meet and confer.

1    Ostensibly in response to Plaintiff's objections, Defendants filed a brief styled as

2    "Defendants' Objections and Request to Strike Plaintiff's Counter-Designations of

3    Deposition Excerpts," on June 28, 2011.  Dkt. 235.  The two-sentence long brief states, in

4    its entirety, as follows:  "Defendants Bullock, Christ, Petersen, and Speaker object and

5    move to strike Plaintiff's counter-designations of portions of the transcripts of Curtis

6    Henderson, Daniel Vasquez, and [Dr.] Nicole Schneider.  Plaintiff's counter-designations

7    should be stricken because they are untimely and not permitted by the Court's pre-trial

8    order."  Id. at 1-2.

9        Turning first to Plaintiff's objections to Defendants' designation of discovery

10   excerpts, the Court finds that Defendants have waived any challenge to Plaintiff's

11   objections by failing to respond to those objections.  The Court's Order for Pretrial

12   Preparation specifies that any responses to objections to evidence were to be submitted by

13   June 28, 2011.  The brief submitted by Defendants on June 28, 2011, however, completely

14   fails to respond to any of Plaintiff's objections.  Thus, the Court sustains Plaintiff's

15   unopposed objections to Defendants' designation of discovery excerpts.  See Burch v.

16   Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1123 (E.D. Cal. 2006) (sustaining

17   defendants' evidentiary objections where plaintiff failed to respond substantively to the

18   objections); Harbert v. Priebe, 466 F. Supp. 2d 1214, 1217 (N.D. Cal. 2006) ("Plaintiffs'

19   failure to respond to [the evidentiary objections] would justify sustaining the objections").

20       With regard to Defendants' motion to strike Plaintiff's counter-designations, the

21   Court finds no merit to such request.  The fact that counter-designations of discovery

22   excerpts are not expressly referenced in the Order for Pretrial Preparation does not mean

23   that they are improper or untimely.  To the contrary, the Federal Rules of Civil Procedure

24   provide that after a party has offered part of a deposition into evidence, the opposing party

25   "may require the offeror to introduce other parts that in fairness should be considered with

26   the part introduced, and any party may itself introduce any other parts."  Fed. R. Civ. P.

27   32(a)(6); accord Fed. R. Evid. 106 ("When a writing or recorded statement or part thereof is

28   introduced by a party, an adverse party may require the introduction at that time of any

other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."); see also Bone Care Intern., LLC v. Pentech Pharms., Inc., No. 08-cv-1083, 2010 WL 3894444, at *11 (N.D. Ill. Sept. 30, 2010) ("As Defendants point out, if Plaintiffs introduce part of a deposition transcript, Defendants may then require introduction of other parts pursuant to Rule 106."). Given the foregoing authority, the Court finds nothing erroneous with respect to Plaintiff's counter-designations, and therefore, denies Defendants' motion to strike.

### B. DEFENDANTS' OBJECTIONS TO PLAINTIFF'S DESIGNATION OF DISCOVERY EXCERPTS

Defendants have interposed objections to Plaintiff's designation of discovery excerpts. Dkt. 225. Defendants' objections do not specifically address any particular designation proffered by Plaintiff. Instead, Defendants simply lodge a blanket objection to all of the designations, citing the allegedly "non-specific nature of Plaintiff's discovery designations," and the "multiple layers of hearsay" contained within the designated deposition transcripts. Id.

Defendants' contention that Plaintiff's discovery designations are "non-specific" is specious. Consistent with the Court's Order for Pretrial Preparation, Plaintiff's designations state the name of each witness and identify the page and line of his deposition transcript. Dkt. 218. In addition, excerpts of the relevant written discovery responses are properly attached as an exhibit thereto. Id. As for the hearsay objections, the Court notes that Defendants have failed to cite to any particular deposition transcript to which they take exception. Defendants' failure to provide individualized objections to Plaintiff's designations amounts to a waiver of their right to object (other than as to objections permitted under Federal Rule of Evidence 402 and 403). See Fed. R. Civ. P. 26(a)(3)(B) (stating that "[a]n objection not so made" to a pretrial submission "except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause."). Accordingly, the Court overrules Defendants' objections to Plaintiff's designation of discovery excerpts.

## V.    OTHER PENDING MOTIONS

### A.    DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S IN FORMA PAUPERIS STATUS

Plaintiff commenced the instant action acting pro se, and was granted in forma pauperis ("IFP") status by the Court on November 6, 2007.  Dkt. 8.  On May 6, 2011, well after the March 1, 2010, dispositive motion cut-off, Defendants filed a motion to revoke Plaintiff's IFP status and to dismiss the action pursuant to 28 U.S.C. § 1915(g).  Dkt. 180.  Pursuant to the Court's scheduling order, Plaintiff filed an opposition to the motion on June 6, 2011.  Dkt. 196.  On the same day, Plaintiff paid the $350 filing fee.

Under 28 U.S.C. § 1915(g), a court is required to deny IFP status to a prisoner who "has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief can be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

As an initial matter, Defendants' motion to revoke Plaintiff's IFP status has been mooted by Plaintiff's payment of the civil filing fee moots Defendants' motion.  See Tierney v. Kupers, 128 F.3d 1310, 1312 (9th Cir. 1997) ("Section 1915(g) does not prohibit prisoners from accessing the courts to protect their rights.  Inmates are still able to file claims—they are only required to pay for filing those claims.").  Second, Defendants' motion is untimely.  The deadline for the parties to submit dispositive motions passed on March 1, 2010.  2/4/10 Order at 1, Dkt. 84.  Defendants have neither sought nor has the Court granted leave to extend that deadline.  Moreover, given that the third dismissal on which Defendants' rely was issued on March 29, 2000, see Defs.' Request for Judicial Notice, Ex. C, Dkt. 181-3, Defendants have no plausible excuse for their delay.  Finally, Plaintiff has not incurred three strikes.  The March 29, 2000, dismissal was for failure to timely amend, which does not count as a "strike" under § 1915(g).  See Keeton v. Cox, No. 06-1094, 2009 WL 650413, at *6 (E.D. Cal. Mar. 12, 2009), adopted by 2009 WL 902094

1   (E.D. Cal. Apr. 1, 2009).  Accordingly, Defendants' motion to revoke Plaintiff's IFP status

2   and to dismiss the action is DENIED.

3   **B.     DEFENDANTS' MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL**
        **ORDER OF MAGISTRATE JUDGE**

4

5         On May 18, 2011, Magistrate Judge Bernard Zimmerman granted Plaintiff's motion

6   to compel financial information from Defendants.  Judge Zimmerman rejected Defendants'

7   claim that Plaintiff's discovery request infringed on their privacy rights, finding that the

8   state law authority cited by Defendants does not apply in a federal civil rights action.

9   5/18/11 Order at 2, Dkt. 189.  In addition, Judge Zimmerman found that Defendants'

10  privacy concerns could be accommodated through the use of an "attorneys only" protective

11  order.  Id.  On June 1, 2011, Defendants filed a Motion for Relief from Non-Dispositive

12  Pretrial Order of Magistrate Judge in which they seek reconsideration of Judge

13  Zimmerman's ruling.  Dkt. 193.

14        On nondispositive matters, a Magistrate Judge's order is reviewed to ascertain

15  whether it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R.

16  Civ.P. 72(a); Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 596 F.3d 1036,

17  n.4 (9th Cir. 2010).  Under this standard, decisions of a Magistrate Judge "are not subject to

18  de novo determination" and the reviewing court "may not simply substitute its judgment for

19  that of the deciding court."  Grimes v. City and Cnty. of San Francisco, 951 F.2d 236, 241

20  (9th Cir. 1991).  There is clear error only when the court is "left with the definite and firm

21  conviction that a mistake has been committed."  Easley v. Cromartie, 532 U.S. 234, 242

22  (2001).  The decision as to whether a Magistrate Judge's decision was clearly erroneous or

23  contrary to law is "well within the discretion of the district court."  Thornton v. McClatchy

24  Newspapers, Inc., 261 F.3d 789, 799 (9th Cir. 2001).

25        Defendants contend that Judge Zimmerman erred in failing to weigh the competing

26  interests of the parties; namely, Plaintiff's right to discover information relevant to his

27  claims versus Defendants' privacy interests.  Defs.' Mot. at 4.  This contention lacks merit.

28  Judge Zimmerman's order acknowledges these competing interests, and ultimately

1   concludes that they tipped in favor of disclosure, subject to a protective order to address

2   Defendants' privacy concerns.  5/18/11 Order at 1-2.  Judge Zimmerman clearly balanced

3   the parties' interests and accommodated them in a fair and balanced manner.  The Court

4   finds that Judge Zimmerman's ruling is neither clearly erroneous nor contrary to law, and

5   therefore, DENIES Defendants' motion for relief from his discovery order.  Defendants

6   shall comply with Judge Zimmerman's discovery order forthwith.

7   ### C.   DEFENDANTS' MOTION TO BIFURCATE TRIAL

8   Defendants move to bifurcate the issues of liability and punitive damages at trial.

9   Federal Rule of Civil Procedure 42(b) provides that "for convenience, to avoid prejudice, or

10  to expedite and economize, the court may order a separate trial of one or more separate

11  issues."  Fed. R. Civ. P. 42(b).  Under Rule 42(b), bifurcation of a trial into liability and

12  damages phases may be appropriate where doing so would be economical and efficient, and

13  where there is little overlap in the evidence that would be presented at each phase.  Arthur

14  Young & Co. v. U.S. Dist. Court (Kaufman), 549 F.2d 686, 697 (9th Cir. 1979).

15  The Court is persuaded that bifurcation is appropriate under the circumstances

16  presented.  At trial, the Court will permit the parties to present their respective cases to the

17  jury for a determination of liability.  Should the jury return a verdict and a compensatory

18  damage award in favor of Plaintiff, the proceedings will resume and the parties may present

19  evidence and/or testimony germane to punitive damages (i.e., evidence of Defendants' net

20  worth).[13]  Evidence of the full range of Defendants' conduct will be presented in the first

21  phase of the trial, though the jury will not be instructed on or receive a verdict form on the

22  matter of punitive damages unless and until the jury finds liability and awards damages.

23  The Court therefore GRANTS Defendants' motion for bifurcate, in accordance with the

24  foregoing procedure.

25

26  [13] In § 1983 cases, punitive damages are recoverable "when the defendant's conduct
    is shown to be motivated by evil motive or intent, or when it involves reckless or callous
27  indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56,
    (1983).  Punitive damages also may be awarded to address "malicious, wanton, or
28  oppressive acts or omissions."  Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).

## VI.    <u>CONCLUSION</u>

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.    Plaintiffs' Motion in Limine No. 1 is GRANTED with respect to Plaintiff's felony convictions and DENIED as moot with respect to Plaintiff's juvenile adjudications and misdemeanor convictions.

2.    Plaintiffs' Motion in Limine No. 2 to permit Plaintiff to appear in court in civilian attire and without restraints is DENIED as moot.

3.    Plaintiffs' Motion in Limine No. 3 to exclude evidence of or reference to Plaintiff's disciplinary record is GRANTED.

4.    Plaintiffs' Motion in Limine No. 4 to exclude evidence of or reference to Plaintiff's current prison sentence or incarceration is GRANTED.

5.    Plaintiffs' Motion in Limine No. 5 to exclude evidence or reference to the CDCR having paid for Plaintiff's medical expenses is GRANTED.

6.    Plaintiffs' Motion in Limine No. 6 to exclude evidence or reference to other, unrelated lawsuits is GRANTED.

7.    Plaintiffs' Motion in Limine No. 7 to exclude extrinsic evidence to impeach Daniel Vasquez is GRANTED.

8.    Plaintiffs' Motion in Limine No. 8 to preclude Defendants from cross-examining Daniel Vasquez regarding any of the specific instances of misconduct allegedly leading to his departure from the CDCR is GRANTED.

9.    Plaintiffs' Motion in Limine No. 9 to exclude expert opinion testimony of Drs. Pappanaickenpa Ramani Chandrasekaran, Gregory M. Duncan and Larry J. Maukonen is DENIED as moot.

10.    Defendants' Motion in Limine No. 1 to exclude all evidence regarding Plaintiff's cubital tunnel syndrome/bilateral entrapment is DENIED.

11.    Defendants' Motion in Limine No. 2 to exclude all evidence regarding Plaintiff's carpal tunnel syndrome is DENIED.

12.     Defendants' Motion in Limine No. 3 to preclude Dr. Nicole Schneider from testifying regarding the cause of Plaintiff's injuries is DENIED.

13.     Defendants' Motion in Limine No. 4 to preclude Plaintiff from personally testifying as to his medical diagnosis for the truth of the matter asserted is GRANTED.

14.     Defendants' Motion in Limine No. 5 to exclude Plaintiff's expert Daniel Vasquez from testifying as an expert witness is DENIED.  Defendants' motion to preclude Mr. Vasquez from offering legal opinions as well as any opinions regarding the causation and treatment of Plaintiff's elbow and wrist injuries or the credibility of Defendants and correctional officials is DENIED as moot.

15.     Defendants' Motion in Limine No. 6 to have Plaintiff shackled at trial is DENIED as moot.

16.     Defendants' Motion in Limine No. 7 to bar Plaintiff's claim for damages against Defendant Bullock is DENIED.

17.     Defendants' Motion in Limine No. 8 regarding Plaintiff's confidentiality designations is DENIED as moot.

18.     Defendants' Motion in Limine No. 9 to exclude other inmate appeals is DENIED as moot.

19.     Defendants' Motion in Limine No. 10 to exclude testimony from other inmates is DENIED as moot.

20.     Plaintiff's objections to Defendants' designation of discovery excerpts are SUSTAINED.  Defendants' motion to strike Plaintiff's counter-designations is DENIED.

21.     Defendants' objections to Plaintiff's designation of discovery excerpts are OVERRULED.

22.     Defendants' Motion to Revoke Plaintiff's In Forma Pauperis Status is DENIED.

23.     Defendants' Motion for Relief from Non-Dispositive Pretrial Order of Magistrate Judge is DENIED.

24.     Defendants' Motion to Bifurcate Trial is GRANTED.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25.     This Order terminates Docket 180, 183, 193, 222 and 226.

IT IS SO ORDERED.

Dated:  July 15, 2011

SAUNDRA BROWN ARMSTRONG
United States District Judge