1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      OAKLAND DIVISION

11

12   CURTIS LEE HENDERSON, SR.,              Case No:  C 07-02838 SBA

13              Plaintiff,                    **ORDER DENYING DEFENDANTS'
                                              MOTION FOR JUDGMENT AS A
14         vs.                                MATTER OF LAW**

15   J. PETERSON, C. SPEAKER, J.T. PATCH,     Dkt. 273
     M.D. BULLOCK, S.L. THOMPSON, J.
16   MCBRIDE, DA CHRIST, G. KELLY, J.
     GETZ, J. BROWN, S. LUCKETT, R. TUPY,
17   M. COOK, K. CRUSE, J. AKIN, J.
     MOULTON, D. MANDEL, S. WRIGHT, ET.
18   AL,

19              Defendants.

20

21         The parties are presently before the Court on Defendants' Motion for Judgment as a

22   Matter of Law Under Federal Rule of Civil Procedure 50.  Having read and considered the

23   papers filed in connection with this matter and being fully informed, the Court hereby

24   DENIES the motion for the reasons set forth below.  The Court, in its discretion, finds this

25   matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal.

26   Civ. L.R. 7-1(b).

27

28

## I.      BACKGROUND

Plaintiff Curtis Lee Henderson brings the instant excessive force action, pursuant to 42 U.S.C. § 1983, based on an incident occurring on August 16, 2006, while he was housed at Pelican Bay State Prison ("Pelican Bay").  He alleges that, without justification, Correctional Officers ("CO") James Petersen (erroneously sued as "Peterson"), Clay Speaker and Michael Bullock viciously beat him with their batons, punched him in the face, smashed his head into the concrete floor and "yanked" him off the ground by his handcuffs.  In addition, Plaintiff claims that CO David Christ failed to intercede on his behalf to stop the beating.  Trial in this matter commenced on July 18, 2011.  During his case-in-chief, which was presented on July 18, 21 and 22, 2011, Plaintiff presented testimony from the following percipient witnesses:  (1) himself; (2) James Patch; and (3) Defendant Speaker.  Plaintiff also presented expert testimony from medical expert Nicole Schneider, M.D., and use-of-force expert Daniel Vasquez, as well as documentary evidence, including Plaintiff's medical records.

At the close of Plaintiff's presentation of evidence, Defendants orally moved for judgment as a matter of law under Rule 50(a).  The Court set a briefing schedule, directing Defendants to file their motion by 6:00 p.m. on July 23, 2011, and Plaintiff to file his response by 9:00 a.m. on July 25, 2011.  Defendants contend that Plaintiff's claims of excessive force are not credible and are contradicted by other evidence in the record.  In addition, Defendants contend that they are entitled to qualified immunity.  Both parties timely filed their papers, and the matter is now ripe for adjudication.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 50(a) states as follows:

**(a)  Judgment as a Matter of Law.**

**(1)  In General**

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

1

> (A) resolve the issue against the party; and

2

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

3

4

> **(2) Motion.**

5

> A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

6

7

8   Fed. R. Civ. P. 50(a).  In deciding a motion under Rule 50(a), the Court reviews all of the

9   evidence and draws all reasonable inferences in favor of the nonmoving party.  Reeves v.

10  Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The Court is not permitted to

11  make credibility determinations or weigh the evidence.  Id.  The salient inquiry is whether

12  the evidence "permits only one reasonable conclusion[.]"  Pavao v. Pagay, 307 F.3d 915,

13  918 (9th Cir. 2002).

14  **III.    DISCUSSION**

15      **A.    JAMES PETERSEN AND CLAY SPEAKER**

16         The pertinent question in excessive force cases is whether the use of force was

17  "objectively reasonable in light of the facts and circumstances confronting [the officers],

18  without regard to their underlying intent or motivation."  Graham v. Connor, 490 U.S. 386,

19  397 (1989); Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007).  The

20  objective inquiry into reasonableness is highly fact-specific.  Scott v. Harris, 550 U.S. 372,

21  383 (2007); Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010).  Because of the

22  factually intensive nature of excessive force cases, the Ninth Circuit has repeatedly

23  cautioned lower courts to take care in deciding excessive force cases without tendering the

24  issue to the jury.  As explained in Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002):

25

> Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.  This is because police misconduct cases almost always turn on the jury's credibility determinations.

26

27

28

Id. (emphasis added).  It is reversible error for the Court to invade the province of the jury where there is evidence to support Plaintiff's version of events.  Id.

Drawing all reasonable inferences in favor of Plaintiff, the Court finds that the evidence presented by Plaintiff during his case-in-chief is more than sufficient to establish that Speaker and Petersen's use of force was unreasonable and unjustified under the circumstances presented.  According to Plaintiff, his address book fell to the floor after Petersen searched him in the rotunda of the housing unit.  After Petersen kicked the address book away, he intimated that it would not be returned.  Jacob Decl. Ex. A at 31:2-6.  After Plaintiff inquired why that was the case, Petersen accused Plaintiff of wanting to "play games."  Id. at 31:8-9.  Plaintiff responded that there were important names and telephone numbers in the address book,[1] in response to which Petersen yelled, "I thought you was [sic] having fucking chest pains."  Id. at 31:10-14.

Plaintiff bent over to retrieve his address book, at which point Petersen forcefully drove his baton into Plaintiff's back.  Id. at 32:16-24.  At the same time, Speaker grabbed Plaintiff's arm and began using his baton to strike Plaintiff in his neck and head.  Id. Petersen and Speaker continued attacking Plaintiff with their batons with multiple strikes to his head, neck and shoulder blades.  Id. at 33:2-16.  After Plaintiff tried to retreat, Speaker sprayed him with pepper spray.  Id. at 34:1-7.  As Plaintiff was laid "spread eagle" on the ground, Petersen and Speaker "jumped down on [his] back," pulled his arms back and handcuffed him "so tight [that] they cut into [his] skin," causing his entire left arm to become numb.  Id. at 37:10-38:9.[2]  The Court finds this testimony, along with the testimony of Plaintiff's experts and his presentation of documentary evidence, to be more than sufficient to support Plaintiff's claim that Speaker and Petersen acted in an objectively unreasonable manner in light of the facts and circumstances confronting them.  Graham,

---

[1] The address book contained the addresses and photographs of his family members, including his mother, father, brothers and children.  Jacob Decl. Ex. A at 32:7-10.

[2] Plaintiff has proffered expert testimony and medical records to corroborate that he sustained serious medical injuries allegedly attributed to Defendants' conduct.  See, e.g., Pl.'s Exs. 37, 124A, 125A, 130A, 132A, 133A, 134A, 139A, 143 and 144.

1   490 U.S. at 397.  While Defendants posit that Petersen and Speaker's use of force was

2   necessary to maintain order, the jury could quite easily find otherwise.  The Court therefore

3   denies Defendants' Rule 50(a) motion as to Speaker and Petersen.

4       **B.   MICHAEL BULLOCK**

5       Defendants concede that Plaintiff testified that Bullock smashed his head into the

6   ground, punched him in the jaw with such force that his head bounced off of the floor, and

7   "yanked" him off of the floor by his handcuffs, causing him to sustain nerve injury.  Jacob

8   Decl. Ex. A at 38:15-17, 38:24-39:7, 90:5-10, 91:3-7.  According to Defendants, however,

9   these allegations are "completely disproved by the interview Plaintiff participated in on the

10  morning after the incident, the contemporaneous report, and Plaintiff's medical records."

11  Mot. at 4.  Setting aside Defendants' questionable characterization of the record, their

12  argument is inappropriately predicated upon an assessment of Plaintiff's credibility.  See

13  Santos, 287 F.3d at 853.  Accordingly, Defendants' motion is denied as to Bullock.

14      **C.   DAVID CHRIST**

15      Law enforcement officers "have a duty to intercede when their fellow officers

16  violate the constitutional rights of a suspect or other citizen."  Cunningham v. Gates, 229

17  F.3d 1271, 1289 (9th Cir. 2000).  In the corrections context, a prison guard has an

18  affirmative duty to intervene on behalf of a prisoner if other officers are violating the

19  prisoner's constitutional rights in his presence, or if he knows that the prisoner's rights are

20  being violated.  See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).  However,

21  correctional officers can be held liable for failing to intercede "only if they had an

22  opportunity to intercede."  Cunningham, 229 F.3d at 1289.

23      Here, Plaintiff testified that as Defendant Bullock grabbed his head and wrenched it

24  to the left, he saw Defendant Christ standing by the front door to the housing unit.  Jacob

25  Decl. Ex. B at 20:9-21.  Plaintiff made eye contact with Christ and pleaded for him to

26  intervene to "get these guys off of [him]," but Christ simply looked at Plaintiff and walked

27  out the door, allowing Bullock to continue his assault.  Id. Ex. A at 39:1-7.  This testimony,

28  if credited by the trier of fact, is sufficient to establish that Christ had a duty and

opportunity to intercede, but refused to do so.  Defendants' contention that Plaintiff could not possibly have seen Christ presents an issue of credibility, which the Court cannot assess on a Rule 50(a) motion.  Therefore, Defendants' motion for judgment as a matter of law as to Christ is denied.

### D.   QUALIFIED IMMUNITY

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  The issue of qualified immunity generally entails a two-step process, which requires the court to first determine whether the defendant violated a constitutional right and then to determine whether that right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201-202 (2001).  In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court modified the Saucier test and "gave courts discretion to grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding in the first instance whether any right had been violated."  James v. Rowlands, 606 F.3d 646, 650-51 (9th Cir. 2010) (discussing Saucier standard after Pearson).  If there are disputed issues of material fact underlying the issue of qualified immunity, however, the court must adopt the version of the facts presented by, and draw all reasonable inferences in favor of, the non-movant.  Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010).

This Court previously rejected Defendants' qualified immunity defense in its Order denying their motion for summary judgment with respect to Plaintiff's excessive force claim.  See 9/30/10 Order at 13-16, Dkt. 117.  In their Rule 50(a) motion now before the Court, Defendants nonetheless argue that their "actions were reasonable given the situation which confronted them."  Mot. at 9.  Defendants contend that the officers did not intend to "hurt" Plaintiff and that they were compelled to apply force based on Plaintiff's allegedly "aggressive and assaultive behavior towards them."  Id.  But, as discussed above, there is ample evidence to support a jury determination that Defendants violated Plaintiff's

constitutional rights.  As such, the first <u>Saucier</u> prong issue cannot be resolved as a matter of law on a Rule 50(a) motion.

Alternatively, Defendants contend that the law was not clearly established at the time of the incident in 2006 such that "it would not have been clear to the Defendants that their conduct was unlawful…."  Mot. at 10.  This contention is wholly without merit.  This Court previously ruled that at the time of the incident, the "use of excessive force by correctional officers on a prisoner—who is not resisting—was a violation of the Eighth Amendment."  9/22/10 Order at 15.  The Court further found that "the case law at that time clearly prohibited failing to intervene to prevent the use of excessive force[.]"  <u>Id.</u> Defendants ignore the Court's prior ruling, and instead, argue that they were justified in using force in response to Plaintiff's allegedly non-compliant conduct.  Mot. at 10. However, whether Defendants were justified in using force is germane to the question of whether their conduct was reasonable, not whether the law was clearly established at the time of the incident.  The Court concludes that Defendants are not entitled to judgment as a matter of law based on the doctrine of qualified immunity.

## IV.   **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendants' Motion for Judgment as a Matter of Law is DENIED.  This Order terminates Docket 273.

IT IS SO ORDERED.

Dated:  July 25, 2011

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

- 7 -